*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, LLC,

        Plaintiff,

and

CONNIE SARAZIN,

        Intervening-Plaintiff-Appellant,

and

BIO MAGNETIC RESONANCE, INC.,

        Intervening Plaintiff,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
September 19, 2019

No. 342443
Macomb Circuit Court
LC No. 2016-003123-NI

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, LLC,

        Plaintiff,

and

CONNIE SARAZIN,

        Intervening-Plaintiff-Appellee,

and

BIO MAGNETIC RESONANCE, INC,

        Intervening Plaintiff,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

No. 343671
Macomb Circuit Court
LC No. 2016-003123-NI

---

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Plaintiff-appellant, Connie Sarazin (plaintiff),[1] brought this action for recovery of no-fault personal injury protection (PIP) benefits. Following a jury trial, the trial court entered a judgment of no cause of action in favor of defendant, Home-Owners Insurance Company. In Docket No. 342443, plaintiff appeals the trial court's decision granting defendant's motion for a directed verdict on plaintiff's claim for replacement services. In Docket No. 343671, defendant appeals the trial court's order denying its motion for case evaluation sanctions under MCR 2.403(O). We affirm in Docket No. 342443, and reverse and remand for further proceedings in Docket No. 343671.

## I. FACTS AND PROCEEDINGS

Plaintiff was injured in an automobile accident on February 20, 2014. For several months after the accident, defendant paid plaintiff first-party PIP benefits, including medical expenses, work loss, replacement services, and other allowable expenses. Defendant discontinued paying benefits after plaintiff returned to work on September 1, 2014. After that time, plaintiff continued to receive medical treatment and replacement services, but defendant refused to pay for those benefits. In June 2016, plaintiff underwent cervical spine surgery at Southeast Michigan Surgical Hospital (SMSH). She returned to work three weeks later, fully recovered.

Plaintiff filed a complaint against defendant for breach of contract for failure to pay PIP benefits after September 1, 2014, in Macomb County. SMSH filed a complaint against defendant in the Wayne Court for direct recovery of plaintiff's medical expenses. Venue in SMSH's action was transferred to Macomb County, and the Macomb Circuit Court consolidated plaintiff's action with SMSH's and ordered that all further pleadings be filed in SMSH's case.

---

[1] Sarazin and plaintiff Southeast Michigan Surgical Hospital (SMSH) originally commenced separate actions for recovery of PIP benefits. The two actions were later consolidated, and the trial court ordered that all further pleadings were to be filed in the case brought by SMSH. SMSH's claim was eventually dismissed, and the case proceeded to trial solely on Sarazin's claims. For ease of reference, "plaintiff" in this opinion refers only to Sarazin.

-2-

Bio Magnetic Resonance, Inc. (BMR), intervened as a plaintiff, also seeking direct recovery of medical expenses incurred after September 1, 2014. After our Supreme Court decided *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 214-219; 895 NW2d 490 (2017) (holding that the no-fault act does not confer standing on a service provider to bring a direct action for unpaid PIP benefits for services provided to an insured), the trial court dismissed SMSH's and BMR's claims without prejudice. The case proceeded to trial on plaintiff's claims for PIP benefits incurred after September 1, 2014.

At trial, defendant moved for a directed verdict on plaintiff's claim for replacement services. Defendant argued that plaintiff failed to offer proof that she actually incurred expenses for household services provided by family members and friends. The trial court granted defendant's motion. At the close of the parties' proofs, plaintiff's claims for medical expenses, wage loss, attendant care benefits, and other allowable expenses were submitted to the jury. The jury found that plaintiff suffered accidental bodily injury in an automobile accident on February 20, 2014, but that she did not incur allowable expenses on or after September 1, 2014, arising out of the February 2014 accident. Accordingly, the jury determined that plaintiff was not entitled to any additional PIP benefits.

After the trial court entered a judgment of no cause of action in favor of defendant, defendant filed a motion for case evaluation sanctions under MCR 2.403(O). The trial court denied the motion, finding that defendant failed to establish that the case evaluation award was unanimous and was therefore disqualified from receiving benefits under MCR 2.403(O)(7).

## II. DOCKET NO. 342443

Plaintiff argues that the trial court erred by granting defendant's motion for a directed verdict on her replacement-services claim. We review de novo a trial court's decision on a motion for a directed verdict. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Id.*

Under MCL 500.3107(1)(c), PIP benefits include

> [e]xpenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

Replacement services under MCL 500.3107(1)(c) are distinct from "allowable expenses" under MCL 500.3107(1)(a); "allowable expenses" are "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). See also *Douglas v Allstate Ins Co*, 492 Mich 241, 259; 821 NW2d 472 (2012) (defining "allowable expenses"). "Services that were required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself *because* of the injury, are replacement services, not allowable expenses." *ZCD*

-3-

*Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 341-342; 830 NW2d 428 (2012) (quotation marks and citation omitted).

Both MCL 500.3107(1)(a) and (c) require that expenses for compensable services be "incurred" before a claimant can recover benefits. This requires a plaintiff to prove that she incurred a liability, see *Douglas*, 492 Mich at 267-268, but does not require "formal documentation," *Fortier v Aetna Cas & Surety Co*, 131 Mich App 784, 790; 346 NW2d 874 (1984). In *Douglas*, 492 Mich at 267-268, our Supreme Court interpreted the term "incur" as it appears in MCL 500.3107:

> This Court has defined "incur" as it appears in MCL 500.3107(1)(a) as " '[t]o become liable or subject to, [especially] because of one's own actions.' " Similarly, a "charge" is a "[p]ecuniary burden, cost" or "[a] price required or demanded for service rendered or goods supplied." Thus, the statutory requirement that "charges" be "incurred" requires some degree of liability that exists as a result of the insured's actually having received the underlying goods or services. Put differently, because a charge is something "required or demanded," the caregiver must have an expectation that she be compensated because there is no "charge[] incurred" when a good or service is provided with *no* expectation of compensation from the insurer.[56]

> ---
>
> [56] Of course, a caregiver who provides services to a family member need not present a formal bill to the family member or enter into a formal contract with that family member in order to satisfy the requirement that the caregiver have an expectation of payment from the *insurer* (although those arrangements will, of course, satisfy the evidentiary requirements). However, even in the absence of a formal bill or contract, there must be some evidence that the family member expected compensation for providing the services and of the actual services rendered. In other words, there must be some basis for a fact-finder to conclude that the caregiver had *some* expectation of compensation from the insurer, even if the expectation of compensation was not the primary motivation for providing the care.
>
> ---
>
> [Citations omitted; alterations in *Douglas*.]

Plaintiff introduced into evidence the forms that her service providers completed, signed, and submitted to the insurer. The service providers completed the forms using defendant's codes to identify the tasks that they performed. Defendant paid replacement-service benefits pursuant to these forms until plaintiff's return to work on September 1, 2014. Evidence that plaintiff's providers completed and submitted reimbursement forms supports an inference that they had an expectation of reimbursement, especially when they *obtained* reimbursement through this procedure before. By previously reimbursing plaintiff's replacement-service providers, defendant implicitly acknowledged that this expense was "incurred." Although plaintiff did not directly testify that the service providers expected payment, she did testify that (1) she and her

helpers completed and signed forms to document the services provided, (2) the reimbursement forms were supplied by defendant, and (3) they believed that defendant should pay for the services. This constitutes "some evidence that the family member expected compensation," and "some basis for a fact-finder to conclude that the caregiver had *some* expectation of compensation from the insurer . . . ." *Douglas*, 492 Mich at 268 n 56. Accordingly, the trial court erred by granting defendant's motion for a directed verdict on plaintiff's replacement-services claim.

We conclude, however, that the court's error was harmless. An error in a ruling is not a ground for granting a new trial unless refusal to take this action appears inconsistent with substantial justice. MCR 2.613(A). A trial court's erroneous decision to direct a verdict is harmless where it is apparent that the outcome would have been the same had the issue been submitted to a jury. See *Eberbach v Woods*, 232 Mich 392, 397-398; 205 NW 174 (1925) (any error in directing a verdict in favor of one defendant was harmless where the jury found in favor of another defendant against whom the plaintiff had a stronger case, and it was apparent from the verdict rendered that had the issue of the defendant's liability been submitted to the jury, the jury also would have rendered a verdict in favor of that defendant).

Although the jury found that plaintiff suffered injuries arising from the February 20, 2014 accident, it found that she did not incur any allowable expenses, including medical expenses and attendant care, on or after September 1, 2014. Based on the verdict rendered, the jury determined that if plaintiff had a need for medical treatment and attendant care after September 1, 2014, that need did not arise from injuries sustained in the February 20, 2014 accident. From this, it is apparent that the jury would have also concluded that if plaintiff needed replacement services after September 1, 2014, those, too, were not related to the accident. The crucial question for all of plaintiff's claims was whether her need for benefits after September 1, 2014, arose from her injuries. This question was fairly submitted to the jury, and the jury concluded that it did not. There is simply no basis for finding that plaintiff had a need for replacement services that arose from her accident injury that outlasted her need for medical treatment and attendant care related to the accident. Accordingly, the trial court's error in granting defendant a directed verdict with respect to replacement services was harmless. See *Eberbach*, 232 Mich at 397-398.

## III. DOCKET NO. 343671

Defendant argues that the trial court erred when it denied case evaluation sanctions and taxable costs under MCR 2.403 and MCR 2.625. "A trial court's decision whether to grant case evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Taxation of costs to a prevailing party under MCR 2.625(A) is within the discretion of the trial court. *Blue Cross & Blue Shield of Mich v Eaton Rapids Community Hosp*, 221 Mich App 301, 308; 561 NW2d 488 (1997). Although a trial court is not required to justify awarding costs to a prevailing party, it must justify the failure to award costs. *Id*.

Under the general "American rule," attorney fees are not recoverable unless authorized by a statute, court rule, or common-law exception. *Id*. MCR 2.403(O) imposes a sanction on

parties who reject a case evaluation award and subsequently fail to obtain a more favorable verdict. MCR 2.403(O)(1) provides:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

"Actual costs" include those costs taxable in any civil action and a reasonable attorney fee. MCR 2.403(O)(6)(a) and (b). "Costs shall not be awarded if the case evaluation award was not unanimous." MCR 2.403(O)(7).

The case evaluation panel issued an award of $95,000 to plaintiff, which plaintiff and defendant both rejected. It is undisputed that the verdict was more favorable to defendant than the case evaluation. But the trial court ruled that MCR 2.403(O)(7) barred defendant from receiving case evaluation sanctions because defendant failed to show that the case evaluation award was unanimous. The trial court's ruling was error.

Although defendant did not submit documentation from the case evaluation panel showing that the award was unanimous, it submitted an affidavit from its lead attorney, who explicitly averred that the award was unanimous. The court rule does not specify how the moving party must prove unanimity. Indeed, the rule's passive-voice phrasing—"[c]osts shall not be awarded if the case evaluation award was not unanimous"—suggests that a non-unanimous award is a disqualifier left to the opposing party to assert. Plaintiff never disputed that the award was unanimous. We therefore conclude that the trial court erred by denying sanctions under MCR 2.403(O)(7) because (1) defendant's motion was supported by an affidavit representing that the case evaluation award was unanimous, (2) plaintiff never countered or otherwise disputed that assertion, and (3) the trial court had no factual basis for finding that the award was not unanimous.

The trial court also questioned the justice of imposing case evaluation sanctions on a plaintiff-insured where a plaintiff-medical provider's direct claim was required to be dismissed by *Covenant Med Ctr*, 500 Mich 191. Before the court dismissed SMSH and BMR as parties, those parties participated in case evaluation and received awards of $70,000 and $11,000, respectively, which defendant rejected. SMSH also rejected its award, although BMR accepted its award. The trial court remarked that imposition of sanctions on plaintiff was contrary to the interests of justice because it had the effect of penalizing plaintiff for SMSH's rejection.

MCR 2.403(O)(1) provides that the rejecting party "*must* pay the opposing party's actual costs" if the verdict is less favorable. "The use of the word 'must' indicates that the imposition of these sanctions is mandatory." *Allard v State Farm Ins Co*, 271 Mich App 394, 272; 722 NW2d 268 (2006). The only interest-of-justice exception to this mandate is in MCR 2.403(O)(11), which states, "If the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." MCR 2.403(O)(2)(c) provides that the term "verdict" includes "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation." This exception did not apply in this

case, which involved a jury verdict. MCR 2.403(O)(2)(a). Accordingly, the trial court did not have discretion to deny sanctions under the interest-of-justice exception.[2]

The trial court also failed to address defendant's request for taxable costs under MCR 2.625. MCR 2.625(A)(1) provides that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." The trial court simply determined that defendant was not entitled to case evaluation sanctions and did not otherwise address defendant's request for taxable costs.

On appeal, defendant asks this Court to award it the full amount of its requested taxable costs, $21,306.25, and the full amount of its requested attorney fees, $114,180. Defendant was entitled to recover its "actual costs" as case evaluation sanctions, consisting of "those costs taxable in any civil action" and "a reasonable attorney fee." MCR 2.403(O)(6)(a) and (b). "[T]he burden of proving the reasonableness of the requested fees rests with the party requesting them." *Smith*, 481 Mich at 528-529. Because the trial court concluded that defendant was not entitled to case evaluation sanctions, it did not address defendant's exhibits supporting and documenting its claim for fees, nor did it address defendant's submitted bill of costs and supporting documentation. Accordingly, we reverse the trial court's order denying defendant's motion for case evaluation sanctions and remand for a determination of taxable costs and reasonable attorney fees in accordance with MCR 2.403(O)(6) and MCR 2.625.

---

[2] We also disagree with the trial court's conclusion that plaintiff was unfairly penalized by SMSH's rejection of its case evaluation award before the court dismissed it as a party. MCR 2.403(O)(4) provides rules for cases involving multiple parties. The case evaluation panel issued separate awards for plaintiff, SMSH, and BMR. Plaintiff complains that she did not have any input in the decision by SMSH to reject its case evaluation award. MCR 2.403(O)(4)(a) provides that "in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties." The case evaluation panel awarded plaintiff $95,000, which did not encompass the charges by SMSH or BMR. The dismissal of those parties gave plaintiff the opportunity to seek recovery of those charges from defendant directly, as a PIP medical expense. In any event, ignoring the awards for the dismissed parties and considering only the case evaluation award for plaintiff, the verdict still was more favorable to defendant than the case evaluation award. There is no basis for concluding that plaintiff was somehow penalized or otherwise prejudiced by either the dismissal of SMSH's and BMR's indirect claims, or by SMSH's prior rejection of its own case evaluation award.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica